# UNITED STATES OF AMERICA
# MERIT SYSTEMS PROTECTION BOARD

PATRICIA ELLEN GIARDINA,
   Appellant,

  v.

DEPARTMENT OF THE NAVY,
   Agency.

DOCKET NUMBER
AT-0752-20-0677-I-1

DATE: March 25, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Georgia A. Lawrence, Esquire, and Shaun Southworth, Esquire, Atlanta, Georgia, for the appellant.

David Kendrick, Esquire, Panama City, Florida, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

## FINAL ORDER

The appellant has filed a petition for review of the initial decision, which affirmed her removal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to apply the Board's current standard for analyzing the appellant's discrimination and retaliation claims, we AFFIRM the initial decision.

## BACKGROUND

At all times relevant to the present appeal, the appellant held the position of Scientist (Oceanographer) with the Naval Surface Warfare Center Panama City Division. Initial Appeal File (IAF), Tab 1 at 1, Tab 12 at 145. In 2019, the appellant applied for a vacancy announcement for Branch Head for the Littoral Acoustics and Target Physics Branch but was not selected. IAF, Tab 19 at 6, 15-16. The individual who was selected for the position in March 2019 became the appellant's first-level supervisor. IAF, Tab 12 at 51, Tab 19 at 16, 68.

In June 2019, the appellant's new supervisor gave her a detailed tasking assignment "to assist in the development of a written trade study focused on non-GPS position, navigation and timing technologies specifically for maritime environments." IAF, Tab 12 at 97-101. The assignment set forth 6 specific tasks, i.e., 5 research tasks and a 3,000-word trade study report presenting her findings on the research tasks. *Id*. at 97-99. The assignment set forth deadlines for each of the tasks, including a draft and final version of the trade study report. *Id*. at 100. Finally, the assignment explicitly set forth the dates and times of weekly status meetings between the appellant and her supervisor. *Id*. The original

deadline to complete the research and draft report was September 30, 2019. *Id*. at 97. However, in December 2019, the appellant's supervisor provided an extension of time, until February 5, 2020, in order to allow the appellant to complete the tasking assignment and address the problems he identified with her work product. *Id*. at 84, 92-96. In his email transmitting the updated tasking assignment, the supervisor stated that the weekly meetings would recommence and that the updated document contained a list of the dates, times, and locations of the meetings. *Id*. at 84, 96.

The record suggests that the appellant and her supervisor had a difficult working relationship from the start, resulting in progressive discipline concerning the appellant's purported disrespectful and unprofessional conduct, including a May 2019 letter of reprimand, a June 2019 three-day suspension, an August 2019 five-day suspension, and a November 2019 twelve-day suspension. *Id*. at 128-43.

In September 2019, the appellant filed a formal equal employment opportunity (EEO) complaint raising over 20 claims on the basis of age, race, color, religion, and retaliation for EEO activity, including her nonselection for the supervisory position. IAF, Tab 11 at 34-40, 72. The formal EEO complaint included 15 claims identifying the supervisor and 6 claims identifying the Division Head, concerning disciplinary actions ranging from the letter of reprimand to suspensions. *Id*. at 73-75. The appellant amended her EEO complaint in November 2019 to include a 12-day suspension identifying the Division Head. *Id*. at 88-90, 95.

In January 2020, the supervisor issued a notice of proposed removal based on the charges of unprofessional conduct (one specification) and failure to follow instructions (one specification). IAF, Tab 12 at 57-61. The first specification alleged that the appellant failed to attend a scheduled weekly meeting regarding the tasking assignment on December 18, 2019. *Id*. at 57. The specification further stated that the appellant's response to her supervisor's email concerning the missed meeting included the following statement: "I am a Scientist, I would

like to conduct research at work. I do not want to play administrative games with you. Please be respectful of me as a person and a Scientist." *Id*. at 57-58. The failure to follow instructions charge alleged that the appellant failed to meet the extended January 10, 2020 deadline for the five research tasks in the tasking assignment and that she had not informed her supervisor of any potential problems with meeting the due dates. *Id*. at 58. The supervisor noted that he had provided "generous time extensions" despite the appellant's refusal to meet her deadlines, and that she failed to incorporate his assessments on her drafts. *Id*.

The agency rescinded the proposed removal and issued a subsequent proposal to remove the appellant following events that transpired during the January 28, 2020 meeting in which the agency presented the appellant with the proposed action. *Id*. at 51-56. The new proposal included two additional specifications of unprofessional conduct, based on the findings of a Command Evaluation and Investigations Office inquiry. *Id*. at 52-53. The Command Directed Investigation (CDI) report substantiated allegations that the appellant had made inappropriate remarks to Federal employees and used a personal cellphone camera to take unauthorized pictured on the U.S. Navy installation. *Id*. at 72-81. Specification 2 alleged that, after being presented with the notice of proposed removal, the appellant called her colleagues derogatory names including "despicable" and "idiots," and that she referred to certain management officials as "fucking despicable, low-lifes." *Id*. at 52. The specification further alleged that the appellant exhibited disorderly conduct while being escorted by base police by "physically trying to push past a police officer and get into the [commanding officer's] office," before eventually complying with directions to leave the building. *Id*. Specification 3 alleged that the appellant took photographs of base police officers with her cell phone despite being directed "repeatedly to put the phone down," and that she was brought to the base police station for processing. *Id*. at 53. The specification alleged that the appellant had violated an agency policy regarding the use of cameras on the installation. *Id*. The deciding official

sustained the proposed removal. *Id.* at 16-23. He sustained specifications 1 and 2 of the charge of unprofessional conduct and the charge of failure to follow instructions. *Id*. at 18-21. He did not sustain specification 3 of the unprofessional conduct charge. *Id*. at 19-20.

The appellant timely appealed her removal, arguing that the agency "retaliated against her for prohibited personnel practices and age discrimination." IAF, Tab 1 at 4. The appellant maintained that she "was subjected to unwarranted severe progressive disciplinary action" for 1 year and experienced severe prejudice for many years. *Id*. After holding a hearing, the administrative judge issued an initial decision affirming the appellant's removal. IAF, Tab 30, Initial Decision (ID) at 1, 17. She found that the agency proved the charges of unprofessional conduct and failure to follow instructions. ID at 5-12. The administrative judge found that the agency had established a nexus between the appellant's misconduct and the efficiency of the service and that the penalty of removal was reasonable. ID at 12, 16. Finally, she found that the appellant failed to prove her affirmative defenses of discrimination based on race or age or retaliation for EEO activity. ID at 12-15.

The appellant has filed a petition for review, challenging the administrative judge's findings sustaining the charges and penalty and determining that she failed to prove her affirmative defenses. Petition for Review (PFR) File, Tab 1 at 7-15. The agency has filed a substantive response, and the appellant has filed a reply. PFR File, Tabs 3-4.

## DISCUSSION OF ARGUMENTS ON REVIEW

The appellant's due process argument is unpersuasive.

On petition for review, the appellant argues that the initial decision must be reversed because the deciding official "committed a due process error" by considering the appellant's allegedly unacceptable performance as an aggravating factor, without notifying her that he was considering performance in the penalty

determination. PFR File, Tab 1 at 6-7; ID at 13 n.16. The administrative judge noted that the appellant raised this argument for the first time at the hearing. ID at 13 n.16. During the hearing, the deciding official testified that he had completed a written, formal penalty analysis and provided the document to Human Resources (HR). IAF, Tab 28, Hearing Testimony (HT). Because it was unclear whether the agency had produced the document during discovery, the administrative judge ordered the agency to submit the *Douglas*[2] factors checklist into the record. *Id*.; IAF, Tab 27. The administrative judge found the appellant's argument to be without merit, "considering this action was predicated on the appellant's poor performance and failure to complete her work as required." ID at 12 n.16.

When an agency intends to rely on aggravating factors as the basis for the imposition of a penalty, such factors should be included in the advance notice of adverse action so that the employee will have a fair opportunity to respond to those factors before the agency's deciding official. *Lopes v. Department of the Navy*, 116 M.S.P.R. 470, ¶ 5 (2011). The U.S. Court of Appeals for the Federal Circuit has explained that, if an employee has not been given notice of any of the aggravating factors supporting an enhanced penalty, an ex parte communication with the deciding official regarding such factors may constitute a constitutional due process violation because it potentially deprives the employee of notice of all of the evidence being used against her and the opportunity to respond to it. *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1280 (Fed. Cir. 2011). This analysis applies not only to ex parte communications introducing information that previously was unknown to the deciding official, but also to information personally known and considered by the deciding official, if that information was not included in the notice of proposed removal to the appellant. *Lopes*, 116 M.S.P.R. 470, ¶ 10.

---

[2] In *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), the Board set forth a nonexhaustive list of 12 factors that are relevant in assessing the penalty to be imposed for an act of misconduct.

On review, the appellant acknowledges that the notice of proposed removal "mentioned job performance," but maintains that she had not been told prior to her removal that her job performance was unacceptable.  PFR File, Tab 1 at 6; IAF, Tab 12 at 54.  She argues that the administrative judge "erroneously conclude[d]" that her removal was predicated on poor performance, when the action concerned alleged misconduct.  PFR File, Tab 1 at 7.  The appellant asserts that the agency "provided no advanced warning" that the removal action was based on poor performance and that "it was a shock" to learn this information during the hearing.  *Id*.  In her reply to the agency's response to the petition for review, the appellant seems to combine her due process argument with her affirmative defense of retaliation for EEO activity.  PFR File, Tab 4 at 5.  In support of her conclusory declaration that, "[b]ased on the record there is no way" that the deciding official considered only the material in the notice of proposed removal, the appellant merely states that the proposing and deciding officials are named parties in her EEO complaint.  *Id*.

The appellant mischaracterizes the administrative judge's findings. Although the administrative judge noted in a footnote that the removal action was "predicated on the appellant's poor performance and failure to complete her work as required," the initial decision sustained the appellant's removal for two charges of misconduct pursuant to chapter 75.  ID at 5-12, 13 n.16.  As the agency argues, the notice of proposed removal referenced extensive prior discipline for unprofessional conduct towards management officials and failure to follow instructions regarding her work assignments.  PFR File, Tab 4 at 5; IAF, Tab 12 at 54.  Copies of all of the disciplinary actions were enclosed with the notice of proposed removal.  IAF, Tab 12 at 128-43.  Given her extensive prior discipline related to the carrying out of her job duties and interactions with management, the appellant's assertion that "it was a shock" to learn at the hearing that her job performance played a role in the penalty analysis is not credible, at best.  PFR File, Tab 1 at 7.

During the hearing, the appellant's attorney asked the deciding official several direct questions about the appellant's job performance, beginning with the question, "Didn't she maintain an excellent record for 30 years?" HT. The deciding official testified that, while the appellant had never been on a performance improvement plan, her performance was barely satisfactory. HT. The deciding official testified that his decision was based on conduct, not performance. HT. Regarding the *Douglas* factors worksheet, the deciding official did check "No" to the question of whether the appellant's performance was "currently acceptable." IAF, Tab 27 at 7. However, in the explanation section discussing his finding that it was an aggravating factor, the deciding official highlighted the appellant's shortcomings in engaging with fellow coworkers, securing funding for projects, and that she was not dependable on research-related tasks. *Id.* These issues were addressed in the notice of proposed removal and the appellant's prior disciplinary actions. IAF, Tab 12 at 54, 126-43. Moreover, the deciding official stated in the decision letter that he had taken into account the appellant's "performance on the job, ability to get along with fellow workers, and dependability." *Id*. at 21. Therefore, we find that the appellant has presented no convincing evidence or argument that the agency deprived her of notice of all of the evidence being used against her and the opportunity to respond to it. *Ward*, 634 F.3d at 1280; *Lopes*, 116 M.S.P.R. 470, ¶ 5; *see* 5 C.F.R. § 1201.56(b)(2)(i)(c) (stating that the appellant has the burden of proof with respect to affirmative defenses).

<u>The appellant has presented no basis for disturbing the administrative judge's findings that the agency proved the charges and the reasonableness of the penalty.</u>

*The administrative judge properly sustained the charges of unprofessional conduct and failure to follow instructions.*

On petition for review, the appellant argues that the administrative judge erred in sustaining the charges. PFR File, Tab 1 at 7-13. Most of her arguments constitute mere disagreement with the administrative judge's factual findings and

credibility determinations. *Id*. The administrative judge thoroughly reviewed the record evidence and made reasoned credibility findings in sustaining the charges of unprofessional conduct and failure to follow instructions. ID at 6-12. We note that the appellant does not challenge the administrative judge's finding that the agency proved that there was a nexus between the charged misconduct and the efficiency of the service, and we see no basis to disturb that finding. PFR File, Tab 1 at 4-15, Tab 4 at 4-7; ID at 12. For the reasons discussed below, we find that the appellant has presented no basis for us to reweigh the evidence or substitute our assessment of the evidence for that of the administrative judge. ID at 9-26; *see Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility); *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987).

Regarding specification 1 of the unprofessional conduct charge, the administrative judge found the proposing official's testimony straightforward, sincere, and consistent with the written record. ID at 7 (citing *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458-62 (1987) (identifying factors that an administrative judge must consider in making credibility determinations). In contrast, she found that the appellant's testimony conflicted with the written evidence and was not believable. ID at 7. On review, the appellant argues that she was present at the time of the scheduled meeting and that her email, the content of which she does not challenge, was not unprofessional. PFR File, Tab 1 at 8-16. She declares that "it is inherently improbable" that her supervisor was at the meeting because he did not send her an email about her failure to attend the meeting until 114 minutes after the scheduled time. *Id*. at 8. The appellant's arguments are mere disagreement with the administrative judge's findings and she does not present a compelling basis for overturning the administrative judge's credibility determinations. *See Haebe v. Department of Justice*, 288 F.3d 1288,

1301 (Fed. Cir. 2002) (holding that the Board may overturn credibility determinations only when it has "sufficiently sound" reasons for doing so).

Regarding specification 2 of the unprofessional conduct charge, the administrative judge considered the testimony of the proposing official as well as agency HR and security personnel. ID at 8-9; IAF, Tab 12 at 19, 72-81. The appellant does not challenge the facts set forth in the specification, but rather argues that the agency exaggerated the severity of the behavior, essentially making an argument that the penalty was excessive because calling agency personnel "despicable and idiots . . . does not warrant removal." PFR File, Tab 1 at 10-11. She declares that her trying to enter the base commander's office, but stopping after security intervened, constituted "oppositional activity," not unprofessional conduct. *Id*. at 11. The administrative judge properly considered the testimony of the appellant and multiple agency witnesses, rather than relying on the CDI report, which contained only the investigator's conclusions rather than the original witness statements and for which appellant was not interviewed. ID at 10 n.14. The appellant does not raise any argument that warrants the Board reweighing the evidence or substituting our assessment with that of the administrative judge. *See Crosby*, 74 M.S.P.R. at 105-06; *Broughton*, 33 M.S.P.R. at 359.

Finally, the appellant asserts that the administrative judge "impermissibly ignore[d]" specification 3 of the unprofessional conduct charge. PFR File, Tab 1 at 11. Contrary to the appellant's assertion, the administrative judge specifically noted that the deciding official did not sustain this specification. ID at 6 n.9; IAF, Tab 12 at 19-20. It is well established that the Board is required to review the agency's decision in an adverse action solely on the grounds invoked by the agency. *See Byers v. Department of Veterans Affairs*, 89 M.S.P.R. 655, ¶ 22 (2001). Indeed, any consideration of this specification by the administrative judge would have been in error. *See Akers v. Department of the Treasury*, 100 M.S.P.R. 270, ¶ 7 (2005) (finding that the administrative judge's action of

sustaining a specification that the deciding official did not sustain was error), *aff'd*, 190 F. App'x 941 (Fed. Cir. 2006).

Regarding the charge of failure to follow instructions, the appellant's primary argument seems to be that, because the proposing official acknowledged in the specification that she had given "generous time extensions," the administrative judge erred in finding that she had failed to follow the instructions in the tasking assignment. PFR File, Tab 1 at 12-13; IAF, Tab 12 at 20-21. The administrative judge found that the appellant failed to complete the assignments even after receiving multiple extensions. ID at 10-11. Although the appellant maintains that she completed the tasking assignment "multiple times" and the proposing official chose not to accept her work, the administrative judge noted that the appellant did not deny that she failed to incorporate his edits and the appellant does not challenge this finding on review. ID at 11; PFR File, Tab 1 at 12. The documentary evidence in the record demonstrates that the appellant received clear notice and instructions from her supervisor regarding her missed deadlines and incomplete tasks. IAF, Tab 12 at 84, 102, 110. The appellant's conclusory argument that the proposing official "set [her] up for failure" is not supported by the evidence. PFR File, Tab 1 at 12.

*The administrative judge properly sustained the penalty of removal.*

When, as here, all of the agency's charges are sustained, the Board will review the agency-imposed penalty only to determine if the agency considered all of the relevant factors and exercised management discretion within the tolerable limits of reasonableness. *See Pinegar v. Federal Election Commission*, 105 M.S.P.R. 677, ¶ 53 (2007); *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981). In making this determination, the Board must give due deference to the agency's primary discretion in maintaining employee discipline and efficiency, recognizing that the Board's function is not to displace management's responsibility, but to ensure that managerial judgment has been properly exercised. *Pinegar,* 105 M.S.P.R. 677, ¶ 53. The Board will modify or

mitigate an agency-imposed penalty only when it finds that the agency failed to weigh the relevant factors or that the penalty clearly exceeds the bounds of reasonableness. *Id*.

Regarding the penalty, we first note that the bulk of the appellant's arguments about the penalty actually concern her affirmative defenses. She opines that the penalty of removal was improper because the removal action was "tainted by discrimination and retaliation." PFR File, Tab 1 at 7-15. The appellant argues that the proposing official "relied on communications of protected EEO and whistleblowing activity to justify increasingly harsh discipline." PFR File, Tab 4 at 5. Her main argument addressing the penalty is that the administrative judge should have considered the issue of provocation in determining whether the penalty of removal was reasonable, particularly concerning the unprofessional conduct charge regarding her behavior at the meeting in which the agency presented her with the notice of proposed removal. PFR File, Tab 1 at 9-10. She also asserts generally that the proposing official's "harassment was part of the provocation" and that the agency was "taking advantage of how they unfairly provoked [her] by failing to separate her from her harasser." *Id*. at 10. The deciding official testified that it was the agency's practice to have the supervisor, in addition to HR, present for all proposed disciplinary actions. HT.

The administrative judge found that the deciding official's testimony was consistent with his statements in the removal decision letter. ID at 16; HT; IAF, Tab 12 at 22. In finding the appellant's past discipline an aggravating factor, the deciding official emphasized that the nature of the appellant's earlier disrespectful and unprofessional misconduct was similar to that in the present appeal. IAF, Tab 12 at 22, Tab 27 at 6. Additionally, the administrative judge noted that the appellant's extensive prior discipline "put her on notice that her continued behavior would not be tolerated" and demonstrated "a consistent failure to comply with instructions." ID at 16. Therefore, the administrative judge

found that the appellant's 34 years of Federal service were outweighed by the aggravating factors. *Id.* The appellant's conclusory argument that she should not be held accountable for her conduct because the agency provoked her by failing to separate her from the supervisor she claimed was "her harasser" provides no basis for disturbing the administrative judge's penalty assessment. PFR File, Tab 1 at 10. We agree with the administrative judge that the deciding official properly weighed the appropriate *Douglas* factors and that the record supports the penalty of removal. ID at 16.

<u>The administrative judge correctly found that the appellant failed to prove her discrimination and retaliation affirmative defenses.</u>

The appellant asserts that the administrative judge erred in finding that the preponderance of the evidence did not support her claims of discrimination based on age and race. PFR File, Tab 4 at 5. In the initial decision, the administrative judge concluded that the appellant failed to prove that age or race was a motivating factor in her removal. ID at 13-14. The administrative judge found that the appellant had "done little to explain why she believed her age was a factor in the agency's decision to remove her" other than raising the affirmative defense of age discrimination. ID at 13. Similarly, the administrative judge found that the appellant "provided scant evidence" to support her claim of discrimination on the basis of race. ID at 14.

The Age Discrimination in Employment Act states that "personnel actions . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). Similarly, Title VII requires that such actions "shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). Thus, an appellant may prove a claim of discrimination by showing that such discrimination "play[ed] any part" in the way a decision was made. *Babb v. Wilkie*, 140 S. Ct. 1168, 1173-74 (2020); *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 21. A finding that prohibited discrimination played "any part" in the contested action is the same as a finding

of "motivating factor." *Pridgen*, 2022 MSPB 31, ¶ 21. One may prove discrimination by various methods. *Id.*, ¶¶ 23-24.

On review, the appellant's entire argument regarding age discrimination consists of a statement that she was over 40 years old at the time of the relevant events in the removal proceeding and "show[ed] that similarly situated employees were treated differently." PFR File, Tab 4 at 6. She does not cite any evidence or argument in the record or hearing testimony where she identified purported comparators. *Id*. Regarding her claim of discrimination on the basis of race, the appellant makes no argument whatsoever on review in support of her conclusory declaration that the administrative judge erred in finding that the evidence did not support the claim. PFR File, Tabs 1, 4. The appellant has provided no basis for disturbing the administrative judge's findings that she failed to prove that either her race or age was a motivating factor in the agency's action.

The appellant also challenges the administrative judge's findings on her retaliation claim, arguing that the agency took "intentional and deliberate steps" to harm her after she filed an EEO complaint regarding her nonselection for the branch chief position and intended to "chill her EEO rights." PFR File, Tab 1 at 13. Claims of retaliation for opposing discrimination in violation of Title VII are analyzed under the same framework used for Title VII discrimination claims. *Pridgen*, 2022 MSPB 11, ¶ 30. Thus, the appellant must establish by preponderant evidence that her EEO activity was at least a motivating factor in her removal. *Id.*, ¶ 31.

On review, the appellant claims that a prior disciplinary action, a 5-day suspension for disrespectful and unprofessional conduct concerning an email the appellant sent to her supervisor, was "direct evidence of retaliation" because agency officials disciplined her for "complaining about their harassment." PFR File, Tab 1 at 13; IAF, Tab 12 at 135-36. She argues that her "removal builds on this rotten core" and "is necessarily tainted by it." PFR File, Tab 1 at 14. The appellant's email to her supervisor (the proposing official in both the suspension

and present removal actions) that resulted in the suspension contained the sentence, "I in no way accept the harassment by you or any other people in X department." IAF, Tab 12 at 136. However, the seven-sentence email also stated that her supervisor "and all involved [were] a disgrace to the US Navy" and that she was "not forgiving" and would "not forget all these actions taken." *Id*. During the hearing, in response to extensive questioning from the appellant's attorney regarding the circumstances around this prior discipline, the deciding official testified that there was "no tolerance for harassment in his organization" and that he had referred the matter to HR because the mail contained the word "harassment." HT. As noted by the administrative judge, the deciding official testified that he told the appellant, "if you feeling like you're being harassed, let's go to EEO." ID at 15; HT. The appellant's attorney questioned the deciding official whether he disciplined her for sending an email using the term "harassment," and the deciding official responded that the basis of the suspension was the overall disrespectful statements in the email to her supervisor and not that she had raised the issue of harassment. HT.

Having reviewed the relevant hearing testimony and written record, we find the appellant's argument that the agency took progressive discipline against her in order to chill her EEO rights unpersuasive and unsupported by the evidence. PFR File, Tab 1 at 13. We note that the administrative judge focused only on the appellant's nonselection claim in her formal EEO complaint filed in September 2019, but the complaint included numerous other claims prior to the branch chief hiring action and subsequent actions taken by the proposing and deciding officials, including the progressive discipline actions. ID at 15; IAF, Tab 11 at 38-39, 48-49, 88-89, 97-98.[3] Therefore, although the administrative judge correctly noted that the proposing official was the selectee in the contested

_____

[3] The appellant amended her EEO complaint to include the notice of proposed removal. IAF, Tab 11 at 104. However, a signed statement from the agency's Deputy Director of EEO stated that there was no record of any amendment to the complaint adding the removal action itself. *Id*. at 27.

hiring action and not involved in the selection decision, the appellant did raise numerous complaints regarding actions taken by him. ID at 15. Nevertheless, the appellant's repeated amendments to her EEO complaint adding actions taken by the proposing officials do not demonstrate that the removal action was taken in retaliation for this EEO activity.

The appellant asserts on review that the agency failed to follow U.S. Navy and Department of Defense policies about separating an employee from her "harasser." PFR File, Tab 1 at 14, Tab 4 at 5. Although she cites generally to lengthy policies about conduct, she does not cite to any specific provision or any regulation with which she claims the agency failed to comply.

Finally, regarding the specification 3 of the unprofessional conduct charge, which was not sustained by the deciding official, the clear language reflects that the specification was based on the report of an investigation directed by the commanding officer of the U.S. naval installation. IAF, Tab 12 at 52-53. We find the appellant's assertion on review that the proposing official's inclusion of this specification constituted evidence of retaliation without merit. PFR File, Tab 1 at 14. Therefore, we agree with the administrative judge's motivating factor analysis. Because we find that the appellant failed to prove that discrimination on the basis of age or race or retaliation for EEO activity was a motivating factor in her removal, we do not reach the question of whether these factors were a "but-for" cause of the removal action. *See Pridgen*, 2022 MSPB 11, ¶¶ 22, 31.

The issue of the appellant's security clearance is not before the Board.

Finally, the appellant's allegations on review that the agency tampered with her security clearance by providing information about the charged misconduct to the Department of Defense Central Adjudication Facility and "appears to have blocked" her transfer to another U.S. Navy position are outside the scope of the present removal appeal. PFR File, Tab 1 at 15, Tab 4 at 7; *see Maddox v. Merit Systems Protection Board*, 759 F.2d 9, 10 (Fed. Cir. 1985) (stating that the

Board's jurisdiction is limited to those matters over which it has been given jurisdiction by law, rule, or regulation).

Accordingly, we deny the petition for review and affirm the initial decision as modified by this Final Order.

## NOTICE OF APPEAL RIGHTS[4]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court

---

[4] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board,* 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

<u>http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx</u>.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[5]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

---

[5] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:          *Gina K. Grippando*
                        _____
                        Gina K. Grippando
                        Clerk of the Board

Washington, D.C.